EBENEZER J. BENNETT, PLAINTIFF, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, DEFENDANT.

*Passenger — when obliged to pay extra fare — right of carrier to select route over which passenger is to be carried.*

The plaintiff purchased from the defendant a ticket from Lockport to Troy. There are two routes on defendant's road between Rochester and Syracuse, one the direct route, and the other by Auburn, which is twenty-three miles longer. The defendant was accustomed to carry all through passengers over the direct route. Plaintiff having, at Rochester, taken a train upon the Auburn branch, was requested by the conductor to pay additional fare for the extra twenty-three miles, and upon his refusal so to do was put off the train. In an action brought by him for damages, *held*, that he had no right to insist upon passing over the longer route without paying additional fare, and that he should have been nonsuited.

THIS case came before the General Term upon exceptions by both parties and cross appeals, the plaintiff complaining that the verdict recovered by him (fifty dollars) was too small, and the defendant insisting, first, that the plaintiff was not entitled to recover at all; and, second, that if he had any cause of action, it was but for the recovery of forty-two cents and interest, and that the verdict was excessive.

*E. J. Bennett,* plaintiff, in person.

*Matthew Hale,* for the defendant.

LEARNED, P. J.:

The plaintiff purchased a ticket, issued by the defendants, reading thus: "2150. N. Y. C. R. R. Co. Lockport to Troy. Not good unless stamped by the ticket agent." Between Rochester and Syracuse there are two routes; the direct by Palmyra; the other, which we may call the indirect, by Auburn. The latter is twenty-three miles longer than the former. By the uniform custom of the defendants, all through trains go over the direct route. The plaintiff traveled by virtue of his ticket from Lockport to Rochester. He then traveled to Canandaigua, and thence to Auburn. He "stopped over" at Lockport, and at Seneca Falls. While on the cars, after leaving Auburn, the conductor called on him for his fare; and, upon his producing this ticket, the conductor required him to pay forty-two cents more. This was the legal rate of two cents per mile for the additional distance over the indirect route; or rather, was for the fare from Sennet, the first station east of Auburn, to Syracuse. The plaintiff declined to do this, insisting that his ticket authorized him to travel from Lockport to Troy over either of the two routes. The conductor told him that if he did not pay, he should put him off the cars. The plaintiff yielded to the conductor, without resistance, and got off the cars. He then got on again, and paid the additional fare under protest. No force was used on either side. Both plaintiff and conductor appear to have behaved in a very becoming manner, and so as to preserve the respective rights of the parties, without any unseemly controversy.

The plaintiff sued and recovered damages. And the question now here is, whether he, or the company, were in the right.

The contract, of which the ticket was the evidence, was a contract to carry the plaintiff from Rochester to Troy. If it had been a contract to carry freight, it would seem that the company might have selected which of the routes they chose, unless they should thereby cause unnecessary delay. And, by analogy, it would be reasonable that they might select such of these routes as they chose, over which to transport their passengers.

If there is any thing in this respect which is to be implied for the benefit of the passenger, it would seem to be that he should be carried over the usual route. So much, perhaps, he might claim was implied by their custom. But it is difficult to see what right

he has to insist on being carried over a longer route, and over one on which the defendants are not accustomed to carry their through passengers.

If he had remained in the train on which he started, or on its regular connections, he would have been taken to Troy by the direct route, without difficulty. He chose to "stop over" once or twice, and to this the company practically consented. But, in doing this, he chose to take the indirect route; and thus he was traveling over a greater distance than was necessary in order to go from Rochester to Troy. He did this for his own convenience, and intentionally. There was no accidental getting upon the wrong train. There was nothing unreasonable, therefore, in requiring him to pay more; for the reason that the defendants were rendering him more service than it was necessary for them to do, in order to fulfill the contract to carry him from Rochester to Troy. They allowed him the benefit of his ticket for the same number of miles on the indirect route which it represented on the direct. And they asked pay for the excess. He was not wronged by this request.

If he had purchased, at Rochester, a ticket for the several points to which he went on the indirect route, he would have been required to pay the same amount as he was now required to pay. So that, even if he were in fact misled, when he bought his ticket, and thought it would carry him by the indirect route, still he has lost nothing by this mistake. Because it does not appear that he pays, or is asked to pay, more by reason of the mistake, than he would have paid if he had inquired about the regulations when he bought his ticket, and had been informed fully in respect to them.

The plaintiff should have been nonsuited; and a new trial must be granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

New trial granted, costs to abide event.